IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

JANE DOE 1, JANE DOE 2, AND DOES 3-100,

                    Plaintiffs,

        vs.

THE CONGREGATION OF THE SACRED HEARTS OF
JESUS AND MARY, DIOCESE OF FALL RIVER, SISTERS
OF CHARITY OF MONTREAL ("GREY NUNS"), SISTERS
OF CHARITY OF QUEBEC ("GREY NUNS"),
MISSIONARY OBLATES OF MARY IMMACULATE
EASTERN PROVINCE (THE "OBLATES"), AND BLACK
AND WHITE CORPORATIONS 1-10,

                    Defendants.

---------------------------------------------------------------------------X

Civil Case No.:
1:21-cv-06865-VSB


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FED.R.CIV.P. 12(b)(6), ON BEHALF OF DEFENDANT
MISSIONARY OBLATES OF MARY IMMACULATE EASTERN PROVINCE**

Sara E. Thompson
BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation
*Attorneys for Defendant*
MISSIONARY OBLATES OF MARY
IMMACULATE EASTERN PROVINCE
One Grand Central Place
60 East 42nd Street, 36th Floor
New York, New York 10165
Tel: (646) 218-7560
Sara.Thompson@lawbhs.com

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ............................................................................... 1

II.    ARGUMENTS AND AUTHORITIES................................................................... 1

    A.   Legal Standard ................................................................................................ 1

    B.   Plaintiffs' Claims Are Time-Barred................................................................ 2

         i.  Plaintiffs' claims based on conduct occurring in New York are time-barred. ...........3

        ii. Plaintiffs' claims based on conduct in Massachusetts and Maine are also time-barred. ...……………………………………………………………………………5

    C.   Plaintiffs' Claims Are Not Saved by Fraudulent Concealment Tolling ............................. 6

III.   CONCLUSION.................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ……………………………………………………………………….. 2

*De Sole v. Knoedler Gallery, LLC*,
   974 F. Supp. 2d 274 (S.D.N.Y. 2013) ...................................................................... 7

*Detko v. Blimpies Rest.*,
   924 F.Supp. 555 (S.D.N.Y. 1996) ........................................................................... 2

*Holloway v. Holy See*,
   537 F.Supp.3d 502 (S.D.N.Y. 2021) ..................................................................... 5, 6

*Jones v. Bock*,
   549 U.S. 199 (2007)................................................................................................. 2

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012).................................................................................. 6, 8

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013).................................................................................... 3

*S. H. v. Diocese of Brooklyn*,
   205 A.D.3d 180 (2d Dep't 2022) ............................................................................ 5

*Schneider v. Pearson Educ., Inc.*,
   No. 12 CIV. 6392 JPO, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) .............................. 6, 7, 8

*SOCAR (Societe Cameroonaise d'Assurance et de Reassurance) v. Boeing Co.*,
   144 F. Supp. 3d 391 (E.D.N.Y. 2015) ...................................................................... 2

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998)................................................................................... 3, 5

**Statutes**

CPLR § 202 ................................................................................................................ 5
CPLR § 208(b)........................................................................................................... 4, 8
CPLR § 213-c ............................................................................................................ 4
CPLR § 214-g ............................................................................................................ 1, 4, 5, 6
Fed.R.Civ.P. 12(b)(6)................................................................................................. 1
Fed.R.Civ.P. 9(b) ...................................................................................................... 6, 8

## I. PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant, Missionary Oblates of Mary Immaculate Eastern Province ("Oblates"), in support of its motion pursuant to Fed.R.Civ.P. 12(b)(6) seeking dismissal of the First Amended Complaint ("FAC") (ECF 33) insofar as asserted against Oblates, on the grounds that because Plaintiffs' claims are time-barred they have failed to state a claim upon which relief can be granted.

This suit concerns allegations of child sexual abuse between 1964 and 1970 during which time Plaintiffs attended Sacred Hearts Academy, a boarding-school in Fairhaven, Massachusetts, which was allegedly operated by defendants Roman Catholic Bishop of Fall River, a Corporation Sole i/s/h/a Diocese of Fall River ("RCBFR") and The Congregation of the Sacred Hearts – United States Province i/s/h/a The Congregation of the Sacred Hearts of Jesus and Mary (the "Congregation"). FAC ¶ 21. Plaintiffs assert four causes of action against Oblates (and all other defendants) for (i) negligence; (ii) negligent training, supervision, and retention; (iii) gross negligence; and (iv) premises liability.[1] Despite the two-and-a-half-year revival period afforded by the New York legislature's passage of CPLR § 214-g, Plaintiffs' claims against Oblates were asserted for the first time in their FAC, which was filed on April 20, 2022—***more than eight months*** after the revival window had closed. Plaintiffs' claims against Oblates are therefore untimely and dismissal is warranted.

## II. ARGUMENTS AND AUTHORITIES

### A. *Legal Standard*

In deciding a Rule 12(b)(6) motion, courts must consider whether the complaint "allege[s]

---

[1] A fifth cause of action for breach of fiduciary duty is asserted against RCBFR and the Congregation, **only**.

adequate facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, dismissal is warranted where the "factual allegations demonstrate that relief would be barred by the applicable statute of limitations." *SOCAR (Societe Cameroonaise d'Assurance et de Reassurance) v. Boeing Co.*, 144 F. Supp. 3d 391, 395 (E.D.N.Y. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 214–15 (2007)). Although well-pleaded allegations are accepted as true for purposes of deciding a Rule 12 motion, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. 544 at 555; *Detko v. Blimpies Rest.*, 924 F.Supp. 555, 557 (S.D.N.Y. 1996) ("[c]omplaints containing only conclusory, vague or general allegations . . . cannot survive a motion to dismiss").

## B. Plaintiffs' Claims Are Time-Barred

Plaintiffs allege that they were abused "by Oblates priests, and other clergy members" in New York, Massachusetts, and Maine between 1964 and 1970. FAC ¶¶ 2, 23-24. More specifically, Plaintiffs allege that:

- Oblates "conspired with" the other defendants to "transport and kidnap Plaintiffs from their boarding school in Fairhaven, Massachusetts" to Oblates-owned properties in New York and Maine. *Id*. ¶¶ 30, 33.

- "Oblates priests . . . traveled from Massachusetts to attend funerals and religious ceremonies in New York, Maine, Connecticut, Rhode Island, New Hampshire, and Vermont." *Id*. at 28.

- Plaintiffs were abused at "retreat homes, parishes, and seminaries" located in Newburgh and Essex, New York, which were "owned and operated by" Oblates. *Id*. ¶¶ 23, 44-46.

- Oblates priest Arthur Craig ("Fr. Craig") abused them at the "Oblates' Seminary and Mission House" in Essex, New York. *Id*. ¶¶ 44, 50, 52.

- Unidentified "Oblate priests" abused them in Newburgh, New York. *Id*. ¶ 53.

- Oblates priest Alphonse Breault ("Fr. Breault") abused them at an Oblates seminary in Bucksport, Maine. *Id*. ¶¶ 57-59.

- Oblates "priests" abused them "at seminaries and retreat homes owned by the Oblates" in Bar Harbor, Maine. *Id.* ¶ 101.

- "Oblate priests from New York, Maine, . . . congregated in Massachusetts along with [other of the defendants] to attend funerals and religious ceremonies." *Id.* ¶ 27.

- "Upon information and belief" Plaintiffs were abused by unidentified Oblates "priests" in "Fairhaven, Massachusetts—including on the premises of Sacred Hearts Academy, St. Joseph's Orphanage, and The Provincial House." *Id.* ¶ 62.

- "Upon information and belief" Oblates knew that Fr. Craig and Fr. Breault were "sexual predators" before they abused Plaintiffs, and also knew that "minors were being sexually assaulted at their seminaries," but Oblates' "leaders intentionally covered up the incidents of abuse." *Id.* ¶¶ 102-03.

- "Upon information and belief" in 1965, Oblates priest, Patrick Hollywood ("Fr. Hollywood") abused a "minor seminarian" identified as "T.C." at Oblates' seminary in Newburgh, New York. *Id.* ¶¶ 104-06.

Where, as here, jurisdiction is based on diversity of citizenship, federal courts ordinarily will apply the statutes of limitation of the forum state. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013).

i. **Plaintiffs' claims based on conduct occurring in New York are time-barred.**

Plaintiffs allege they were abused by Oblates clergy on Oblates property located in Essex and Newburgh, New York. They also allege they were "residents of and domiciled in" New York when the abuse occurred. FAC ¶ 6. Accepting these allegations as true, for purposes of the instant motion, the acts described would constitute sexual offenses described in Article 130[2] of the New

---

[2] For purposes of this motion, the FAC is fairly construed as alleging conduct constituting violations of Article 130, but also those specific provisions of Article 130 falling within the ambit of CPLR § 213-c. Following its amendment in 2019, CPLR § 213-c extended the limitations period from 5 to 20 years for certain enumerated sexual offenses, including rape, for claims asserted against **both** the perpetrator and "any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of the said conduct." CPLR § 213-c (Amended L.2019, c. 315, § 3, eff. Sept. 18, 2019).

York penal code, such that their claims would ordinarily be governed by the twenty-year limitation period set forth in CPLR § 213-c, which states in relevant part that:

> Notwithstanding any other limitation set forth in this article, except as provided in . . . [CPLR § 208(b)], all civil claims or causes of action brought by any person for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute rape . . ., or criminal sexual act . . ., or aggravated sexual abuse . . ., or course of sexual conduct against a child . . . may be brought against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of the said conduct, **within twenty years**.

CPLR § 213-c. (Amended L.2019, c. 315, § 3, eff. Sept. 18, 2019) (emphasis added). However, because the claims accrued while Plaintiffs were infants, the infancy tolling provision in CPLR § 208(b) extends the limitation period to "on or before the plaintiff or infant plaintiff reaches the age of fifty-five years." CPLR § 208(b) (Amended. L.2019, c. 11, § 2, eff. Feb. 14, 2019). Plaintiffs allege that they were six- and five-years-old in 1964 when the alleged abuse began. FAC ¶ 2. If true, Jane Doe 1 was born in 1958, Jane Doe 2 was born in 1959, and they were 63- and 62-years-old, respectively, when the FAC was filed in April 2022. Their claims are therefore time-barred.

Indeed, Plaintiffs implicitly concede their claims are untimely by their invocation of the revival statute codified at CPLR § 214-g, which states in relevant part, that:

> every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . ., or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, **which is barred as of the effective date of this section because the applicable period of limitation has expired**, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than **two years and six months** after the effective date of this section.

CPLR § 214-g (eff. February 14, 2019; Amended August 3, 2020) (emphasis added).

The revival window thus closed on August 14, 2021, the same day Plaintiffs filed their original Complaint against the **other** defendants. *See* ECF 1. The original Complaint contains no mention whatsoever of Oblates, nor does it contain allegations of abuse by any Oblate priest (or any other Oblate member or employee) in any of Oblates' religious ministries or otherwise. *See id*. Rather, Plaintiffs filed an Amended Complaint adding Oblates as an entirely new defendant and asserting the aforementioned causes of action against it on **April 20, 2022**, more than ***eight months after*** the revival period had already expired. *See* ECF 33. As such, Plaintiffs' claims against Oblates are untimely and must be dismissed.

ii.     **Plaintiffs' claims based on conduct in Massachusetts and Maine are also time-barred.**

Plaintiffs also allege that Oblates clergy abused them in Massachusetts and Maine. Where more than one states' statute of limitation could apply, federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Stuart*, 158 F.3d at 626. Under New York's choice of law rules, where the claim accrues ***without the state*** it is subject to the shorter of (a) New York's limitation period; and (b) the limitation period of the state where the claim accrued, ***unless*** the claim accrues to a New York resident, in which case New York's limitation period (and tolling rules) will apply. *Id.* at 627 (citing New York's "borrowing statute," codified at CPLR § 202); *see also S. H. v. Diocese of Brooklyn*, 205 A.D.3d 180 (2d Dep't 2022) (holding that CPLR § 202 was not displaced by § 214-g).[3] For purposes of this analysis, tort claims accrue at the time and location where the plaintiff is injured. *S.H.*, at 6 (holding that claims arising out of sexual abuse in Florida accrued in that state); *see also Holloway v. Holy See*, 537 F.Supp.3d 502, 507 (S.D.N.Y. 2021) (same).

---

[3]     Because the pin-cite is not yet available in the official reporter, reference is made to 2022 N.Y. Slip Op. 02982 at 6.

Based on Plaintiffs' allegation that they were "residents of" New York during the relevant time period, the borrowing statute is inapplicable and New York's limitation period applies regardless of where the alleged abuse occurred. Moreover, CPLR § 214-g does not revive time-barred claims predicated on conduct outside of New York. *Holloway*, 537 F.Supp.3d at 505, n.2; *S.H.*, at 4 (holding that CPLR § 214-g does not apply to extraterritorial conduct). Accordingly, because Plaintiffs' claims against Oblates are untimely under New York law, and are not revived by operation of CPLR §214-g, they must be dismissed.

### C. Plaintiffs' Claims Are Not Saved by Fraudulent Concealment Tolling

Plaintiffs further allege that Oblates is "estopped from raising a statute of limitations defense in New York because they fraudulently concealed and covered up acts of child sexual abuse committed in the State of New York." FAC ¶ 29. Plaintiffs' allegations do not support the application of fraudulent concealment tolling.

The statute of limitations "may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted). In addition, every element of the fraudulent concealment claim must be alleged with particularity pursuant to the heightened pleading standards of Fed.R.Civ.P. 9(b). *Schneider v. Pearson Educ., Inc.*, No. 12 CIV. 6392 JPO, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013). To meet this heightened standard, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." *Id*. Where the claim is based on omissions, "the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Id.* And, while "fraudulent intent may be averred generally," the complaint must still contain "a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id*.

Plaintiffs allege "upon information and belief" that Oblates knew Fr. Craig and Fr. Breault were "sexual predators" before the alleged abuse against Plaintiffs began in 1964. FAC ¶ 102. They further allege that unspecified "Oblates leaders" knew that "minors were being sexually assaulted at their seminaries" and that these "leaders intentionally covered up the incidents of abuse." *Id*. ¶ 103. As if by way of illustration, they allege, again "upon information and belief," that in 1965 one seminarian named "T.C." was abused by a Fr. Patrick Hollywood ("Fr. Hollywood") at the Oblates' seminary in Newburgh, New York, and that the seminary's "Father Superior," Fr. McSweeney, knew about the abuse but failed to remove Fr. Hollywood "from ministry and access to children." *Id*. ¶¶ 104-05. There are no allegations that Fr. Hollywood ever abused Plaintiffs.

These allegations do not give rise to a "strong inference of fraudulent intent" on the part of Oblates to conceal the facts giving rise to Plaintiffs' negligence claims, and Plaintiffs' singular allegation to the contrary, i.e., that Oblates "intentionally covered up" prior instances of sexual abuse, is impermissibly vague and conclusory. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations."). Respecting prior knowledge of abuse, Plaintiffs appear to suggest that Oblates knew Plaintiffs would be abused by ***other*** clergy members based on

its alleged knowledge that Fr. Hollywood abused a seminarian in 1965. *See* FAC ¶¶ 103-05. Even accepting the allegations about Fr. Hollywood as true, it would not be reasonable to infer that Oblates had knowledge of widespread abuse based on that fact, and, even if such an inference were reasonable, Plaintiffs do not satisfy the particularity requirements of Rule 9(b) by pleading this prior conduct (or Oblates' knowledge of it) "upon information and belief." *See Schneider*, 2013 WL 1386968, at *4 ("Rule 9(b) pleadings cannot be based upon information and belief.").

Finally, even if Plaintiffs had adequately alleged fraudulent intent, they still do not explain how Oblates' alleged cover-up of prior abuse was injurious to them—that is, how Oblates' nondisclosure of known "sexual predators" (*see* FAC ¶ 102) could possibly have "prevented plaintiff's discovery of the nature of the claim within the limitations period." *See Koch*, 699 F.3d at 157. Because of the 2019 amendments to the CPLR's infancy tolling provision, Plaintiffs' claims did not expire until they turned ***fifty-five-years-old***. *See* CPLR § 208(b). Given the very nature of the allegations, taken together with the generous tolling period afforded them, it is simply not plausible that Jane Doe 1 (b. 1958) and Jane Doe 2 (b. 1959)[4] could not have discovered the existence of their legal claims until after the limitations period had already expired in 2013 and 2014, respectively. Moreover, even if Plaintiffs could not have discovered the existence of their claims before the limitations period expired, they still had the benefit of the revival statute until **August 14, 2021**. And yet, despite filing a detailed, thirty-page Complaint against the other defendants within the revival period, Plaintiffs ***still*** chose not to assert their claims against Oblates until April 2022—more than ***fifty-eight years*** after the claims accrued and ***eight months after*** the revival window closed. Plaintiffs do not allege that they could not have discovered, with reasonable diligence, the basis of their claims against Oblates until after the revival window had

---

4        *See* FAC ¶ 2.

closed. Nor could such an allegation plausibly be asserted given that the alleged facts purportedly are based on Plaintiffs' own personal knowledge and recollection. *See e.g.*, FAC ¶¶ 44-53 and 57-59. Because the facts constituting their claims were available to Plaintiffs before the limitations period ran ***and*** before the revival window closed, they should not be heard to complain that equity should save them. Accordingly, fraudulent concealment tolling is inappropriate in this case, Plaintiffs' claims are time-barred, and the FAC as against Oblates must be dismissed.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Oblates respectfully prays that this Honorable Court allow the within motion in its entirety, and order and adjudge the FAC dismissed, with prejudice, insofar as asserted against Oblates, together with such other, further, and different relief as the Court deems just and proper.

Dated: New York, New York
June 21, 2022

Respectfully submitted,

BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation

By:    /s/ *Sara E. Thompson*
        Sara E. Thompson
*Attorneys for Defendant*
MISSIONARY OBLATES OF MARY
IMMACULATE EASTERN PROVINCE
One Grand Central Place
60 East 42nd Street, 36th Floor
New York, New York 10165
Tel: (646) 218-7560
Fax: (646) 218-7510
Sara.Thompson@lawbhs.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on **June 21, 2022**, the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties or their respective representatives by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's electronic filing system.

_/s/ Sara E. Thompson_
Sara E. Thompson
