UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE 1, JANE DOE 2, AND DOES 3-100,

          *Plaintiffs*,

v.

THE CONGREGATION OF THE SACRED HEARTS OF JESUS AND MARY, DIOCESE OF FALL RIVER, SISTERS OF CHARITY OF MONTERAL ("GREY NUNS"), SISTERS OF CHARITY OF QUEBEC ("GREY NUNS"), MISSIONARY OBALATES OF MARY IMMACULATE EASTERN PROVINCE (THE "OBLATES"), AND BLACK AND WHITE CORPORATIONS 1-10,

          *Defendants*.

Case No. 21 Civ. 6865 (VSB)

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF SISTERS OF CHARITY OF QUEBEC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**BAKER BOTTS L.L.P.**

Andrew M. Lankler
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Sisters of Charity of Quebec*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL & PROCEDURAL BACKGROUND ...................................................................... 1

   I.    FACTUAL BACKGROUND ......................................................................................... 1

   II.   PROCEDURAL HISTORY ........................................................................................... 2

ARGUMENT ............................................................................................................................. 4

   I.    THE AMENDED COMPLAINT FAILS TO ASSERT ANY CLAIM AGAINST THE
       SISTERS OF CHARITY OF QUEBEC ...................................................................... 4

      A.   The Amended Complaint fails to meet minimal pleading standards required by
            Fed. R. Civ. P. 8 ................................................................................................... 5

      B.   The exhibits attached to the Amended Complaint make clear the conduct at issue
            is not attributable to the Sisters of Charity of Quebec. .................................... 6

   II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE SISTERS OF
       CHARITY OF QUEBEC ............................................................................................. 9

   III.  EVEN IF THERE WERE PERSONAL JURISDICTION OVER THE SISTERS OF
       CHARITY OF QUEBEC, A CLAIM AGAINST THEM IS PRECLUDED BY THE
       STATUTE OF LIMITATIONS ................................................................................... 13

CONCLUSION ........................................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allco Fin. Ltd. v. Klee*,
861 F.3d 82 (2d Cir. 2017)........................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................4, 5

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
510 F. Supp. 3d 108 (S.D.N.Y. 2020)......................................................14

*Atuahene v. City of Hartford*,
10 Fed. Appx. 33 (2d Cir. 2001)................................................................5

*Azzarmi v. Key Food Stores Co-operative Inc.*,
No. 20 Civ. 6835 (GBD)(BCM), 2022 WL 884973 (S.D.N.Y. Mar. 25, 2022)....................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................4, 5

*Borden v. City of New York*,
No. 16 Civ. 716 (GHW), 2017 WL 744593 (S.D.N.Y. Feb. 24, 2017)...................................4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).......................................................................7

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021).........................................................................5

*DEF v. ABC*,
366 F. App'x 250 (2d Cir. 2010)...............................................................14

*Dougherty v. Town of Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002).........................................................................4

*Edwardo v. Roman Cath. Bishop of Providence*,
No. 21 Civ. 1514 (KPF), 2022 WL 94969 (S.D.N.Y. Jan. 8, 2022)................................11, 12

*Hamilton v. City of New York*,
No. 16 Civ. 1255 (ARR)(SMG), 2017 WL 486936 (E.D.N.Y. Feb. 6, 2017)........................5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)..................................................................9, 12

*Palmatier v. Lockheed Martin Corp.*,
    No. 13 Civ. 133, 2014 WL 1466489 (N.D.N.Y. Apr. 15, 2014) ...............................4

*Sekisui Am. Corp. v. Hart*,
    No. 12 Civ. 3479 (SAS), 2012 WL 5039682 (S.D.N.Y. Oct. 17, 2012) ...................4

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 129 (2d Cir. 2005).................................................................14

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..................................................................9

**STATUTES**

N.Y. C.P.L.R. 214-g ...........................................................................2, 13

N.Y. C.P.L.R. 302 ...............................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(m) .............................................................................13

Fed. R. Civ. P. 8................................................................................1, 4, 5, 6

Fed. R. Civ. P. 12(b)(6).........................................................................4

Fed. R. Civ. P. 15(c) ............................................................................13

Defendant The Sisters of Charity of Quebec respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs Jane Doe 1, Jane Doe 2, and Jane Does 3-100 (collectively, "Plaintiffs") First Amended Complaint filed on April 20, 2022, in 21 Civ. 6865 (the "Amended Complaint" or "FAC"), pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs, students at the Sacred Hearts Academy in Fairhaven, Massachusetts ("SHA"), brought this action to recover damages under the New York Child Victims Act for sexual abuses they suffered from 1964-1970 while elementary-aged boarding school students at SHA.  The Amended Complaint asserts a series of allegations against various religious groups and leaders, including the Sisters of Charity of Montreal and the Sisters of Charity of Quebec, which the Amended Complaint lumps together collectively as the "Grey Nuns".  The Grey Nuns allegedly operated an orphanage in Fairhaven, Massachusetts, from which they committed sexual abuses against the Plaintiffs in violation of New York law.  However, the Sisters of Charity of Quebec is a foreign charitable organization, and is a distinctly separate entity from the Sisters of Charity of Montreal, which is the entity commonly referred to as the "Grey Nuns". The Sisters of Charity of Quebec have never been affiliated with any schools or orphanages in Fairhaven, Massachusetts, and have never operated any institution in the state of New York.  Plaintiffs' Amended Complaint asserts a series of contradictory claims that conflate the Sisters of Charity of Quebec with other Defendants, and fatally fails to link the Sisters of Charity of Quebec to any of the abuses suffered by Plaintiffs.

## FACTUAL & PROCEDURAL BACKGROUND

### I.     FACTUAL BACKGROUND

Plaintiffs Jane Doe 1 and Jane Doe 2 were enrolled in SHA, a catholic boarding school in Fairhaven, Massachusetts, in 1964.  (FAC ¶¶ 1-2).  At the time, Jane Doe 1 was six years old and Jane Doe 2 was five years old.  (FAC ¶ 2).  Plaintiffs allege that during their six years at SHA, they were subjected to sexual abuses at the hands of priests, nuns, and religious leaders affiliated with the various Defendant-organizations in this matter.  (FAC ¶ 4).

The FAC contains a litany of allegations of abuse Plaintiffs suffered at various orphanages, private residences, clergy-owned retreat homes, and seminaries in New York, Massachusetts and Maine.  (FAC ¶ 110).  Amongst other abuses, Plaintiffs allege that they were subjected to sexual abuse at an orphanage run by "Grey Nuns" in Fairhaven, Massachusetts.  (FAC ¶¶ 2, 62, 86.) However, during this time, the Sisters of Charity of Quebec—which the Amended Complaint lumps together with the Sisters of Charity of Montreal and collectively refers to as "Grey Nuns"— operated no schools or orphanages in Fairhaven.  Indeed, as the exhibits to the Amended Complaint make clear, the  Sisters of Charity of Quebec have been affiliated with other orphanages in Massachusetts, but none in Fairhaven.  Beyond a conclusory allegation that the "Grey Nuns" operated the orphanage at issue in this case, the Amended Complaint puts forth not one single fact that even suggests the Sisters of Charity of Quebec have ever been affiliated with any orphanages or schools in Fairhaven, Massachusetts, or any institutions in New York.

## II.    PROCEDURAL HISTORY

Plaintiffs filed the original complaint in this action on August 14, 2021 – the final day of the statute of limitations period that N.Y. C.P.L.R. 214-g revived for claims of this nature.[1]  This initial complaint did not make any reference to or include the Sisters of Charity of Quebec.  (Doe

---

[1] N.Y. C.P.L.R. initially revived Plaintiffs' ability to assert claims in New York for certain childhood sexual abuses until August 14, 2020.  This time period was extended due to the pandemic until August 14, 2021.

1 et al., v. Congregation of the Sacred Hearts of Jesus and Mary et al., No. 21 Civ. 6865 (VSB) (S.D.N.Y. as filed Aug. 14, 2021), ECF No. 1). However, in an attempt to obtain a voluntary dismissal of their client, counsel for The Sisters of Charity of Montreal provided Plaintiffs' counsel with an ecclesiastical directory that identified another Sisters of Charity entity—The Sisters of Charity of Quebec.  See Declaration of Andrew M. Lankler ("Lankler Decl.") at Exhibits A and B.

While Plaintiffs received information about the nature of separate religious charitable organizations in December, 2021, the first email the Sisters of Charity of Quebec have from Plaintiffs is dated January 27, 2022, nearly 166 days after the initial complaint was filed and, on information and belief, more than a month after the Sisters of Charity of Montreal made it clear to Plaintiffs that there were distinct entities with the name "Sisters of Charity."  Approximately 249 days after the initial complaint was filed and the statute of limitations had passed, the Amended Complaint was filed.  For the first time, this Amended Complaint named the Sisters of Charity of Quebec as a potential defendant in this case.

After the Amended Complaint was filed, but before such was served upon counsel for the Sisters of Charity of Quebec, the Sisters of Charity of Quebec raised the geographical and temporal issues mentioned above to Plaintiffs in a series of letters throughout June 2022.  Despite the contradictions to the allegations in the Amended Complaint, Plaintiffs have not modified their allegations or their pleadings.  Instead, Plaintiffs have continued to pursue their claims against the Sisters of Charity of Quebec with a scattershot pleading that conflates two Sisters of Charity entities in addition to numerous other religious organizations.  The Amended Complaint completely fails to provide notice of the claims alleged against the Sisters of Charity of Quebec or

put them on notice of the specific actions that are alleged against this nonprofit religious organization.

## ARGUMENT

All claims against the Sisters of Charity of Quebec in the Amended Complaint should be dismissed for independent reasons.  First and foremost, the claims in the Amended Complaint fail to meet the standard required of Federal Rule of Civil Procedure 8(a), as they fail to put the Defendants on notice of their alleged wrongs and egregiously fail to account for the numerous geographical and temporal inconsistencies highlighted in the pleadings themselves.  Second, there is no personal jurisdiction in New York over the Sisters of Charity of Quebec.  Third, even assuming the Court found personal jurisdiction, the statute of limitations would have expired for the assertion of these claims.  Because the statute of limitations and jurisdictional challenges would render repleading futile, the Court should dismiss the Plaintiffs' Amended Complaint with prejudice. [2]

### I.    THE AMENDED COMPLAINT FAILS TO ASSERT ANY CLAIM AGAINST THE SISTERS OF CHARITY OF QUEBEC

"To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires more than mere

---

[2] Where "it would be futile…to replead…claims in light of the unambiguous prior release of those claims, [an] amended complaint is dismissed with prejudice."  *See Dougherty v. Town of Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."); *Palmatier v. Lockheed Martin Corp.*, No. 13 Civ. 133, 2014 WL 1466489, at *4 n.8 (N.D.N.Y. Apr. 15, 2014) (holding amendment would be futile where claim was barred by general release).  *Borden v. City of New York*, No. 16 Civ. 716 (GHW), 2017 WL 744593, at *5 (S.D.N.Y. Feb. 24, 2017); *accord Sekisui Am. Corp. v. Hart*, No. 12 Civ. 3479 (SAS), 2012 WL 5039682, at *8 (S.D.N.Y. Oct. 17, 2012) (finding that when a disclaimer of representations and warranties bars claims based on a prior memorandum or other written or oral statements, fraudulent omission claims are barred as duplicative and, accordingly, the fraud claim is dismissed with prejudice).

conclusions, but rather setting forth factual allegations with enough specificity to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Moreover, "'[a] claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *City of New York v. Chevron Corp.,* 993 F.3d 81, 89 (2d Cir. 2021) (quoting *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017)).  Where, as here, a complaint asserts claims against multiple defendants, Federal Rule of Civil Procedure 8(a) requires that the complaint plainly delineate which claims and allegations apply to which defendant, so each party is placed on fair notice of the specific claims against it and the grounds on which they rest.  See, e.g., *Hamilton v. City of New York*, No. 16 Civ. 1255 (ARR)(SMG), 2017 WL 486936, at *4 (E.D.N.Y. Feb. 6, 2017) ("Fed. R. Civ. P. 8 . . . requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiffs' claim is and the ground upon which it rests.'  By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiffs'] complaint failed to satisfy this minimum standard.") (citing *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001).

**A.  The Amended Complaint fails to meet minimal pleading standards required by Fed. R. Civ. P. 8.**

The Amended Complaint fails to specifically delineate the conduct alleged to have been committed by the Sisters of Charity of Quebec in an effort to lump together various religious orders into a single entity.  In doing so, the Amended Complaint fails to give the Sisters of Charity of Quebec notice of the claims against it, utterly failing to meet the pleading standards set out under *Iqbal* and *Twombly*.  The Sisters of Charity of Quebec are mentioned only once in the substance of the Amended Complaint.  Moreover, the body of the Amended Complaint contains no allegations against specific nuns who are alleged to be affiliated with the Sisters of Charity of Quebec.  For the balance of the complaint, the Sisters of Charity of Quebec are referred to

5

collectively with a separate organization, the Sisters of Charity of Montreal, as the "Grey Nuns". (FAC ¶ 10.)  A singular allegation, without more, is wholly insufficient to establish any more than a speculative right to relief from the Sisters of Charity of Quebec.

Further, even using the "Grey Nuns" formulation that conflates the Sisters of Charity of Quebec and the Sisters of Charity of Montreal, there are no substantive allegations that are pled against the Sisters of Charity of Quebec.  All references to the Grey Nuns in the Amended Complaint detail conduct that was allegedly committed by the Grey Nuns alongside other orders of nuns or religious leaders affiliated with other defendants.  (*See e.g.* FAC ¶¶ 27, 28, 30, 44, 46, 49, 51, 53, 57, 63, 77, 108, 117, 164.)  These incidents make vague reference to numerous "trips" or "transports" and fail to specify which Defendant is associated with the action at issue.  (*See* FAC ¶¶ 28, 44.)  The only action attributed to the "Grey Nuns" with any specificity is the operation of other schools, hospitals, and orphanages which, as explained further below, is belied by the record and the Exhibits attached to the Amended Complaint.  (FAC Ex. 4.)  Without a factual basis to distinguish which conduct is attributable to which of the five defendants, the Amended Complaint improperly conflates the conduct of the Sisters of Charity of Quebec with that of the other defendants, failing to put them on notice of the true claims against them as required by Rule 8.

### B. The exhibits attached to the Amended Complaint make clear the conduct at issue is not attributable to the Sisters of Charity of Quebec.

The exhibits attached to the Amended Complaint fail to provide any basis to suggest the Sisters of Charity of Quebec is the proper entity responsible for Plaintiffs' claims.  Specifically, the Amended Complaint alleges that the Grey Nuns operated St. Joseph's Orphanage, where several of the incidents of Plaintiffs' abuse occurred.  (FAC ¶ 107.)  However, the exhibit Plaintiffs cite to support that contention, Exhibit 4, only establishes that in 1948 there was a Franco-

American Orphanage on Pawtucket Street in Lowell, Massachusetts that was affiliated with St. Joseph's boys' school on Merrimack Street, also in Lowell. (FAC Ex. 4 at 2). A 1959 Article from the Lowell Sun further states that the Franco-American Orphanage in Lowell, presumably the one on Pawtucket Street, is staffed by the "Grey Nuns of Charity of Quebec." (FAC Ex. 4 at 1).

However, Lowell, Massachusetts, is nearly 90 minutes by car from Fairhaven, Massachusetts, the location of the St. Joseph's Orphanage where Plaintiffs were abused. (FAC ¶ 62 ("Upon information and belief, Jane Doe 1 and Jane Doe 2 were sexually abused by priests . . . in Fairhaven Massachusetts—including on the premises of Sacred Heart Academy, St. Joseph's Orphanage, and The Provincial House.")) Notably, the Plaintiffs have not alleged any of the abusive acts took place in Lowell, Massachusetts. (*See e.g.*, FAC ¶¶ 21, 30, 40.) The Amended Complaint and exhibits offer no allegations that the St. Joseph's in Lowell is affiliated with the St. Joseph's in Fairhaven.

Moreover, none of the articles that actually mention the allegations of sexual abuse against "Grey Nuns" make any reference to the Sisters of Charity of Quebec. Instead, they make reference explicitly to other entities, such as the "Grey Nuns of Montreal" (FAC Ex. 4 at 4) and the "Sisters of Charity of Saint-Hyacinthe" (FAC Ex. 4 at 5, 7), the latter not being named as a Defendant.

The Plaintiffs, as demonstrated by the series of email exchanges and attachments included herein as Exhibits A and B, relied on counsel for the Defendant the Sisters of Charity of Montreal in deciding to add the Sisters of Charity of Quebec to this action.[3] To that end, counsel for the

---

[3] In assessing a plaintiff's allegations, the Court considers not only the complaint itself but also "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, Plaintiffs' counsel relied on representations made by

Sisters of Charity of Montreal provided a few excerpted pages from a directory, Le Canada Ecclesiastique, for the years 1964, 1967, and 1968-1969.  (Lankler Decl., Ex. B.)  The pages of this directory, which appear to be an ecclesiastical directory, contain no information about an orphanage in Fairhaven.  *Id.*  Instead, they refer to a Saint Joseph's Orphanage in Fall River, Massachusetts.  *Id.*  This seems to be distinct from the Saint Joseph's Orphanage in Lowell, Massachusetts, referenced in the exhibits attached to the Amended Complaint.  Although Plaintiffs have asserted that the ecclesiastical directory was the sole basis for including the Sisters of Charity of Quebec in this action, there is no indication of any orphanage or school affiliated with the Sisters of Charity of Quebec in Fairhaven, Massachusetts, during the time period at issue in the Amended Complaint or any presence at any institution whatsoever in the state of New York.  Nor could there be as no such institutions existed that were affiliated with the Sisters of Charity of Quebec, which did not conduct any business in New York state.

In addition, St. Joseph's, and variations thereof, is a relatively common name for Catholic institutions in Massachusetts.  It is unclear which "Saint Joseph's" institution, if any of those referenced, is at issue in the pleadings given the lack of specificity in the Amended Complaint.  For example, as mentioned above, during the years when the Plaintiffs attended the Sacred Hearts Academy in Fairhaven, the Sisters of Charity of Quebec ran a school named "Mount Saint Joseph's" in a separate town – Fall River, Massachusetts.[4]  While there are a number of institutions affiliated with the Saint Joseph's Parish in Fairhaven, it is not clear that there was any relationship

---

Counsel for the Sisters of Charity of Montreal and certain documents they provided, in drafting their Amended Complaint.  As such, these email exchanges and the documents attached thereto are proper for consideration by this Court.

[4] Meanwhile, Plaintiffs' Exhibit 4 makes reference to a number of other institutions that bear the name "Saint Joseph's" or variations thereof in different towns throughout New England.  It is not clear from the pleadings or the exhibits which institution was allegedly involved in the conduct at issue.

with Mount Saint Joseph's in Fall River.[5]  Plaintiffs have not alleged with any specificity or provided any clarification as to the appropriate "Saint Joseph's" that their pleadings make reference to.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER THE SISTERS OF CHARITY OF QUEBEC

The Court must dismiss the claims against the Sisters of Charity of Quebec as it lacks jurisdiction over them.  To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).  As delineated below, there is no basis for personal jurisdiction and the exercise of personal jurisdiction without adequate contacts with the forum state would not comport with constitutional due process in this instance.

Plaintiffs do not allege general personal jurisdiction over the Sisters of Charity of Quebec, nor could they.  A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render it essentially at home in the forum State.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quotations omitted) (collecting cases).  Even a cursory examination of the arguments in the Amended Complaint and the exhibits provided by Plaintiffs reveals that none of these qualifications have been met. The Amended Complaint includes no particularized statements that the Sisters of

---

[5] It is worth noting that there is also a separate Saint Joseph's church in Fall River from the nineteenth century that is not mentioned anywhere in the Amended Complaint. *See, e.g.*, http://www.stjosephschurchfr.com/history-1.

Charity of Quebec ran institutions in the state of New York.[6]  Nor could it—the Sisters of Charity

of Quebec never operated any institutions in New York state and, accordingly, general jurisdiction

would be inappropriate.

In order to establish specific personal jurisdiction, Plaintiffs must demonstrate that the

Sisters of Charity of Quebec met the qualifications of New York's long arm statute, which provides

that personal jurisdiction may be asserted, when a:

> non-domiciliary, or his executor or administrator, who in person or
> through an agent: 1. transacts any business within the state or
> contracts anywhere to supply goods or services in the state; or 2.
> commits a tortious act within the state, except as to a cause of action
> for defamation of character arising from the act; or 3. commits a
> tortious act without the state causing injury to person or property
> within the state, except as to a cause of action for defamation of
> character arising from the act, if he (i) regularly does or solicits
> business, or engages in any other persistent course of conduct, or
> derives substantial revenue from goods used or consumed or
> services rendered, in the state, or (ii) expects or should reasonably
> expect the act to have consequences in the state and derives
> substantial revenue from interstate or international commerce; or 4.
> owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302 (McKinney).  As detailed in the prior section, there are no particularized

allegations against the Sisters of Charity of Quebec for tortious actions that occurred in New York

in large part because the pleadings fail to make any particularized allegations against the Sisters

of Charity of Quebec at all.

Moreover, specific jurisdiction over the Sisters of Charity of Quebec is inappropriate.  If

the Amended Complaint made allegations about the conduct of specific individual members of the

Sisters of Charity of Quebec, which it does not, there is no colorable claim that these actions were

undertaken by agents of the Sisters of Charity of Quebec, as is required by the long-arm statute.

---

[6] Despite the Amended Complaint's reference to Exhibit 4, with no pin cite or page number, the
Exhibit contains no suggestion that the Sisters of Charity of Quebec operated in New York state.

By contrast, "[c]aselaw makes clear that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Edwardo v. Roman Cath. Bishop of Providence*, No. 21 Civ. 1514 (KPF), 2022 WL 94969, at *11 (S.D.N.Y. Jan. 8, 2022) (collecting cases to emphasize that sexual misconduct must be alleged to be part of responsibility the perpetrator had to his or her employer in order to give rise to a theory of *respondeat superior* and, by extension, jurisdiction under New York's long arm statute).

The Amended Complaint describes the basis for personal jurisdiction by stating that the "Grey Nuns purposely availed themselves to the citizens of New York by unlawfully transporting, kidnapping, and conspiring with clergy. . . to unlawfully transport and kidnap Plaintiffs . . . across state lines to orphanages, private residences, clergy-owned retreat homes, and seminaries in New York." (FAC 30.)  New York courts have routinely rejected the assertion of long-arm jurisdiction on this basis.  Section 302 cannot "serve as a basis for personal jurisdiction, even though a tortfeasor was defendant's agent in New York, because the agent's tortious acts were 'committed for [his] own benefit,' rather than defendants." *Edwardo*, 2022 WL 94969 at *9 (collecting cases). "A principal does not commit a tort 'through an agent,' where an agent engages in tortious conduct that does not benefit the principal and did not, in any way, further the principal-agent relationship." *Id*. at *9 (S.D.N.Y. Jan. 8, 2022).  Deplorable though these allegations are, the Amended Complaint seems to deal only with personal actions—for example, traveling to attend "funerals and religious ceremonies."  (FAC ¶ 27.)

There is no suggestion that the alleged conduct was in any way taken either at the behest or for the benefit of the Sisters of Charity of Quebec or with the knowledge and consent of the Sisters of the Charity of Quebec as part of this organization's mission.  These nefarious allegations

11

are not condoned by the Sisters of Charity of Quebec and are not, and have never been, any part of their business as a religious organization.  The Sisters of Charity of Quebec vehemently deny that any acts of sexual abuse or misconduct were undertaken on the entity's behalf or as part of the official duties of any individual member of the Sisters of Charity of Quebec.  The Sisters of Charity of Quebec did not and do not condone or promote sexual abuse.  Nor have Plaintiffs alleged that the Sisters of Charity of Quebec undertook any such action as part of their mission as a religious organization.

Moreover, an exercise of personal jurisdiction over the Sisters of Charity of Quebec would offend the notion of due process.  In order to assess whether the exercise of personal jurisdiction comports with due process, a court will "evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test… [and w]here the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction is asserted— minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Licci ex rel. Licci*, 732 F.3d at 170.  Here, there are no alleged contacts that the Sisters of Charity had with the state of New York to purposely avail themselves of the privilege of doing business in the forum state.  Plaintiffs, similarly, could not and do not allege that kidnapping children, transporting them to unsafe locations, and committing sexual abuses were in any fashion related to the business conducted by the Sisters of Charity of Quebec.

Under New York law, Plaintiffs have failed to allege that any of the "Grey Nuns" referenced in the Amended Complaint "(i) acted for Defendants' benefit when he committed the tortious conduct giving rise to the action, or (ii) committed these tortious acts with Defendants' knowledge and consent."  *Edwardo*, 2022 WL 94969 at *9.  Nor have Plaintiffs established that

the exercise of personal jurisdiction over the Sisters of Charity of Quebec would comport due process. *Licci ex rel. Licci*, 732 F.3d at 170. Accordingly, the assertion of personal jurisdiction over the Sisters of Charity of Quebec—an entity with no regular contacts with New York—is wholly inappropriate.

### III.      EVEN IF THERE WERE PERSONAL JURISDICTION OVER THE SISTERS OF CHARITY OF QUEBEC, A CLAIM AGAINST THEM IS PRECLUDED BY THE STATUTE OF LIMITATIONS

Lastly, Plaintiffs' claims against the Sisters of Charity of Quebec are precluded by the applicable statute of limitations. Plaintiffs failed to provide any notice of a claim against the Sisters of Charity of Quebec within the timeline by which an amendment would be permitted given the applicable statute of limitations.

New York law provided for an extended statute of limitations until August 14, 2021, and revived certain claims pursuant to the Child Victims' Act. N.Y. C.P.L.R. 214-g. The Amended Complaint naming the Sisters of Charity of Quebec was filed on April 20, 2022, nearly 249 days after the statute of limitations closed for claims of this nature.

In filing the Amended Complaint, Plaintiffs did not exercise adequate, timely diligence to extend the statute of limitations. Pursuant to Federal Rule of Civil Procedure 15(c), an amendment that adds a new party relates back to the original complaint only if it asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading, and if, within the 90-day period provided by Fed. R. Civ. P. 4(m) for service of the original pleading, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Azzarmi v. Key Food Stores Co-operative Inc.*, No. 20 Civ. 6835 (GBD)(BCM), 2022 WL 884973, at *6 (S.D.N.Y. Mar. 25, 2022) (quotations omitted). The Amended Complaint was filed approximately 249 days after

the initial complaint and the end of the statute of limitations – nearly three times the 90-day limitation set forth by the Rules of Federal Procedure for amendment to add a new party.

The 90-day limitation may be subject to a limited exception if the additional party is a foreign entity and the Plaintiffs exercise sufficient diligence in attempting to effect service against them.  In this instance, Plaintiffs have provided no information that suggests the Sisters of Charity of Quebec were aware of the potential claim within the 90-day limitation period, which expired November 12, 2021.  Plaintiffs exercised no such diligence within the 90-day period in this instance.  Rule 4(m) creates an exception for service in a foreign country pursuant to subdivision (f)," but it also provides that, "this exception does not apply if ... the plaintiff did not attempt to serve the defendant [that resides] in the foreign country."  *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 123 (S.D.N.Y. 2020) (*citing USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133–34 (2d Cir. 2005)).  "The foreign country exception to 4(m)'s time limit for service is inapplicable where a party did not attempt service within the limit and had not exactly bent over backward to effect service."  *Astor Chocolate Corp.*, 510 Supp. 3d at 123 (S.D.N.Y. 2020) (*citing DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (quotations omitted)).  Ninety days from this initial filing would have been November 12, 2021, a day before the Sisters of Charity of Montreal, another Sisters of Charity entity, was served with the initial complaint in this matter, which triggered the expiration of the 90-day delay, the response of the Sisters of Charity of Montreal, that it was not the appropriate party.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the claims against the Sisters of Charity of Quebec in the Amended Complaint in its entirety with prejudice.

Dated:  New York, New York
        August 15, 2022               BAKER BOTTS L.L.P.

                                      */s/ Andrew M. Lankler*
                                      Andrew M. Lankler
                                      30 Rockefeller Plaza
                                      New York, New York 10112
                                      Tele.: (212) 408-2516
                                      andrew.lankler@bakerbotts.com

                                      *Attorneys for Defendant Sisters of Charity of Quebec*

15